# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

MARY JEAN SPIVEY and DOUGLAS
ASPHALT PAVING, INC., as
assignees of DIXIE
ROADBUILDERS, INC.,

    Plaintiffs,

v.

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA,

    Defendants.

CV 515-004

## ORDER

In this insurance action, Plaintiffs Mary Jean Spivey and Douglas Asphalt Paving, Inc., seek to enforce an assignment of rights they received in a settlement from Dixie Roadbuilders, Inc., against Dixie's insurer, Defendant American Casualty Company of Reading, Pennsylvania. American Casualty moves to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) on the theory that the occurrence for which Plaintiffs seek coverage, conversion, was not an occurrence covered under Dixie's liability policy with American Casualty. See Dkt. no. 5. Because the underlying policy does not cover conversion, Plaintiffs' claims fail as a matter of law and American Casualty's Motion to Dismiss (Dkt. no. 5) is **GRANTED**.

AO 72A
(Rev. 8/82)

## FACTUAL AND PROCEDURAL BACKGROUND

The Court draws these facts from Plaintiffs' Complaint and accepts them as true in considering American Casualty's Motion to Dismiss. See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007).

Plaintiff Douglas Asphalt had several roadwork contracts with the Georgia Department of Transportation throughout the state. However, Georgia DOT terminated these contracts, ostensibly because the asphalt Douglas Asphalt mixed for the projects was deficient in some respects. Dkt. no. 1, Ex. A ("Compl.") ¶ 6.

Lumbermens Mutual Casualty Company had written security bonds on one of Douglas Asphalt's projects located in Wayne County, Georgia. After Georgia DOT terminated its contracts with Douglas Asphalt, Lumbermens hired Dixie Roadbuilder's Inc. ("Dixie"), to finish the Wayne County project. Despite the switch in contractors, Douglas Asphalt had to leave millions of dollars' worth of traffic control equipment and inventory at the project site for public safety reasons. This equipment belonged to Plaintiff Spivey, who had leased it to Douglas Asphalt. When it finished the project, Lumbermens, "without legal authority, took control of the equipment and either gave or sold it to" Dixie. Id. ¶¶ 7-8.

AO 72A
(Rev. 8/82)

Plaintiffs filed a civil suit against Dixie (the "Underlying Action"), alleging that Dixie had engaged in "willful and malicious conversion of Plaintiffs' security interest or rights" in the equipment. Dixie then sought a defense under a general liability policy it had with its insurer, Defendant American Casualty. American Casualty refused to provide the defense. Nevertheless, Plaintiffs Spivey and Douglas Asphalt obtained consent judgments from Dixie in the amount of $2,000,000 each, or $4,000,000 total. They also received from Dixie an assignment of all of Dixie's rights to any claims it may have against American Casualty. Id. ¶¶ 10-14.

Plaintiffs sued American Casualty in their capacity as assignees in Ware County State Court on December 8, 2014. See id. The Complaint alleges that American Casualty denied its insured coverage in bad faith and breached a statutory duty to indemnify a claim pursuant to Georgia Code section 33-4-6. The Complaint also seeks punitive damages and attorney's fees. Id. ¶¶ 18-25. American Casualty removed the case to this Court on January 14, 2015. Dkt. no. 1.

**LEGAL STANDARD**

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th

Cir. 2010). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

A district court is usually limited to reviewing the allegations on the face of the complaint in considering a motion to dismiss for failure to state a claim. Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). However, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Courts may consider these other

4

sources, along with public records, without converting the motion to dismiss into a motion for summary judgment. <u>Universal Express, Inc. v. U.S. S.E.C.</u>, 177 F. App'x 52, 53-54 (11th Cir. 2006); <u>see also</u> <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1280 n.16 (11th Cir. 1999) (noting that other courts allow a defendant to introduce a document "central to the claim" on a Rule 12(b) motion to dismiss when a plaintiff bases its claims on that document but fails to attach it to the complaint).

Here, the underlying policy is incorporated into the Complaint by reference. <u>See</u> Compl. ¶ 15 ("Defendant American Casualty issued a commercial general liability insurance policy to Dixie Roadbuilders, Inc., Policy Number U2070988189 . . ."). The Complaint also references the complaint in the underlying suit between Plaintiffs and Dixie. Compl. ¶ 10 ("Plaintiffs filed a civil suit against Dixie Roadbuilders, Inc., alleging that Dixie Roadbuilders, Inc. exercised control over the equipment in a manner inconsistent with Plaintiffs' interest which constitutes willful and malicious conversion . . . ."). Because these documents are incorporated into the Complaint by reference and they are central to Plaintiffs' claims, the Court will consider them on American Casualty's Motion to Dismiss without first converting it into a motion for summary judgment.

72A
v. 8/82)

**DICSUSSION**

Plaintiffs bring claims against American Casualty for "bad faith denial of coverage" and breach of duty to indemnify pursuant to Georgia Code section 33-4-6, along with derivative claims for punitive damages and attorney's fees. Compl. ¶¶ 18-26. The substantive claims concern only American Casualty's denial of coverage to Dixie Roadbuilders in the underlying litigation—a denial which Plaintiffs may challenge as assignees of Dixie's claims against American Casualty. American Casualty argues that the Complaint should be dismissed because it was not obligated to cover Dixie for the tort of conversion and therefore cannot have acted in bad faith in refusing to indemnify Dixie. Plaintiffs counter that, despite the fact the Complaint explicitly claims American Casualty wrongly refused to cover Dixie's "willful and malicious" conversion, the Complaint can be liberally construed to allege that American Casualty wrongly refused to cover Dixie's "negligent" conversion. Plaintiffs further argue that negligent conversion would be a covered occurrence under the underlying policy. Alternatively, to the extent the Complaint cannot be construed to allege a claim for bad faith refusal of coverage for negligent conversion, Plaintiffs argue that they should be given leave to amend their Complaint.

In Georgia, the allegations in a complaint against an insured provide the basis for determining whether coverage exists. Ga. Farm Bureau Mut. Ins. Co. v. Hall Cnty., 586 S.E.2d 810, 811 (Ga. Ct. App. 2003). Plaintiff's complaint against Dixie in the underlying suit alleged one cause of action for conversion. Compl. ¶ 4; Dkt. no. 5-2, ¶ 13 (alleging "willful and malicious conversion."). Thus, for Plaintiffs to maintain their assigned denial of coverage claim against American Casualty, they will have to show that "conversion" as alleged in the underlying complaint is a covered occurrence under Dixie's Policy with American Casualty.

The Policy provides that American Casualty will pay for covered property damage caused by an "occurrence." Dkt. no. 5-1, p. 14, Sec. I(1)(b)(1). The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at p. 25, Sec. IV(13). The Policy does not further define "accident." However, the Georgia Supreme Court has held that the term "accident," as undefined in an insurance policy, means "an unexpected happening rather than one occurring through intention or design." Am. Empire Surplus Lines Ins. Co. v. Hathaway, 707 S.E.2d 369, 371 (Ga. 2011). This does not necessarily mean that an intentional act cannot give rise to an "accident"—the Georgia Supreme Court in Hathaway went on to hold that a "deliberate

7

act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." Id. at 372.

The "deliberate act, performed negligently," in Hathaway was a plumber's negligent installation of some pipe at a construction site. Id. at 370. Because of the faulty workmanship, the pipes failed and caused water damage to surrounding properties. Id. Hathaway sought recovery from the negligent plumber's insurance company, American Empire. American Empire denied coverage under the theory that the negligent plumbing work was not an "accident" covered under the Policy. However, the Georgia Court of Appeals held that the water damages resulting from the negligent workmanship was an "accident," and the Georgia Supreme Court agreed. Id. at 372.

This Court has had occasion once before to apply Hathaway's holding to the tort of conversion. In Capital City Insurance Co. v. Forks Timber, a landowner had contracted with a logging company to remove some timber that the landowner had represented was unencumbered by liens. CV 511-039, 2012 WL 3757555, *1 (S.D. Ga. Aug. 28, 2012). In fact, there was a lien on the timber, and the lien-holder sued the logging company for conversion of its security interest in the timber. Id. The logging company sought indemnification from its insurance provider, who denied coverage

on the theory that conversion is not an "accident," and thus not a covered loss. Id.

The Court observed that a conversion requires "'an intentional exercise of dominion or control over a chattel' which seriously interferes with the right of another to control the chattel." Id. at *4 (quoting Restatement (Second) of Torts § 222A (1965)). The logging company, channeling Hathaway, argued that conversion could nevertheless give rise to an "accident," because even though the logging company intentionally harvested the timber, the legal consequence of the harvest (i.e., the conversion), was an unintended result of the act. Id. at *5.

The Court rejected this application of Hathaway: "Without some indication to the contrary—either in the text of Hathaway or from the Georgia courts—this Court reads Hathaway as limited to faulty workmanship cases. This is not a case about negligent, faulty workmanship, and, accordingly, Hathaway does not apply." Id.

Neither is the present case about faulty workmanship. In fact, it is not even about the *unintended* legal consequences of an intentional act. Unlike the case in Hathaway, where the logging company unwittingly converted the timber in question, Plaintiffs here have alleged that Dixie willfully and maliciously converted Plaintiff's equipment. Compl. ¶ 10.

AO 72A
(Rev. 8/82)

Thus, Plaintiffs' Complaint in this case fails on two levels: First, because the allegations in the underlying action determine whether coverage exists for Plaintiffs' denial of coverage claims, there is no coverage here because a "willful and malicious" conversion is not an "accident" under the Policy. The underlying complaint did not seek a remedy for the unintended consequences of an intentional act, but rather for the "willful and malicious" conversion itself. The conversion was not an accident, and is not covered under the Policy. As a matter of law, Plaintiffs cannot prevail on their claim that American Casualty refused to cover the willful and malicious conversion. Second, even assuming the Court looks past the "willful and malicious" language in the underlying complaint and assumes that the "occurrence" in question was actually Dixie's negligent conversion of Ms. Spivey's property, this is not the type of unintended result from a negligent act that <u>Hathaway</u> and other Georgia courts have construed as an "accident" under general liability policies. Even if Dixie and Lumbermens did not know that the traffic equipment was not theirs to take, such an unintentional conversion is not an "accident" under Georgia law.

Plaintiffs suggest that they should be allowed to amend their Complaint to address these deficiencies. Any such amendments would be futile. No matter what changes Plaintiffs would make in the present Complaint, they cannot amend the

AO 72A
(Rev. 8/82)

underlying complaint which determines the existence of coverage in this action. The underlying complaint alleged a "willful and malicious" conversion, for which there is no coverage under the Policy.[1] This fatal deficiency is immutable.

## CONCLUSION

A conversion—whether "willful and malicious" or merely "negligent"—is not an "accident" for general liability policies under Georgia law, and thus is not a covered "occurrence" in this case. Plaintiffs' claims, taken as true, fail to state a claim against American Casualty.[2] As such, the Court **GRANTS** American Casualty's Motion to Dismiss (Dkt. no. 5).

**SO ORDERED**, this 1ST day of September, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[1] The underlying complaint also sought punitive damages for the conversion, which is further indication that the "occurrence" in question was intentional and not an "accident." See Hall Cnty., 586 S.E.2d at 718 (noting that factual allegations do not constitute an occurrence where the plaintiff sought punitive damages in connection with the act and thus "explicitly alleged that the act was intentional or at least evinced an expectation of harm.")

[2] Because the underlying claims in this case are dismissed, the derivative punitive damages and attorney's fees claims must also be dismissed. The Court notes, though, that Plaintiffs concede that the punitive damages claim should be dismissed regardless of the merits of their underlying claims.

AO 72A
(Rev. 8/82)